**Howard Dennis KELLY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 81–2917H.**

United States District Court, W.D. Tennessee, W.D.

Aug. 1, 1985.

Howard Dennis Kelly, pro se.

Joe A. Dycus, Asst. U.S. Atty., Office of the U.S. Atty., Memphis, Tenn., for defendant.

## ORDER GRANTING JUDGMENT TO PLAINTIFF

HORTON, District Judge.

Howard D. Kelly, a federal prisoner, was transported by the United States Marshals Service from a jail in Monroe County, New York, to a detention facility in Lexington,

Kentucky, for a Court appearance in Covington, Kentucky. Along the way, he was lodged in prison facilities at Lewisburg, Pennsylvania; Milan, Michigan; Terre Haute, Indiana; and Nashville, Tennessee. Various deputy United States Marshals participated in Kelly's transfer. Kelly claims that during the course of the journey, his diamond ring, valued at $3,000, turned up missing.

Kelly claims that he, along with his personal property, was in the custody of the Marshals transporting him. The evidence shows also that Kelly and his property were in the custody and possession of various prison facilities, in which he was lodged during his transfer from the Monroe County, New York, jail to the detention facility in Lexington, Kentucky.

Kelly charges the Marshals Service was negligent in the way his property was handled and such negligence was the proximate cause of the loss of his diamond ring.

Kelly filed this lawsuit under the provisions of the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. and 28 C.F.R. § 14.1 et. seq. It is not disputed that he filed the requisite administrative claim. His administrative claim, however, was for a diamond ring valued at $1,500 rather than the $3,000 value claimed for the ring in this lawsuit.

Kelly testified the Marshals Service receipted his property, including his diamond ring, in the jail in Monroe, County, New York. Moreover, he testified Deputy United States Marshals informed him he could not keep possession of his property while he was being transported. During the trip from the Monroe County Jail to Lewisburg, he testified he did not even see his property nor did he sign for it. He was at the Lewisburg prison for a week to ten days and did not see his property while there. However, the property was travelling with him. From Lewisburg, he was transported to the Federal Correctional Institution (FCI) at Milan, Michigan, where again he did not see his personal property and was not allowed access to it. At FCI Milan, Michigan, he was placed on a Bureau of Prisons bus and transported to the United States Penitentiary at Terre Haute, Indiana. Thereafter he was transported to a jail in Nashville, Tennessee where he still did not see his property. From Nashville, Tennessee, Kelly was transported to a detention facility at Lexington, Kentucky.

When he arrived at the detention facility at Lexington, Kentucky, Kelly testified a Deputy United States Marshal brought him a box containing his personal property. He testified he opened the box in the presence of four law enforcement officers and noticed an envelope in the box had been ripped open. He said the envelope had been rolled up and stuffed down in the box. Except for his diamond ring, all other items of his personal property, including other jewelry, were present in the box. He said there were no holes in the envelope in the box.

Kelly said he asked the Deputy Marshals to take a stolen property report. They declined, however, stating they had no jurisdiction. He said he filed a tort claim with the appropriate agency in November, 1979. After waiting two years and receiving no response to his administrative claim, he filed this lawsuit under the Federal Tort Claims Act.

Kelly testified the purchase price of the ring was $1,500. He said the ring had sentimental value as it was a gift from his wife who is now deceased. He claimed the ring had appreciated in value and, for the purpose of this lawsuit, had a fair market value of $3,000. He described the ring as having nine diamond stones in a square formation. He said the ring was purchased from Heritage Jewelers for $1,500. He said he met his wife on July 1, 1972, and they were married July, 1979. She died in June, 1984.

Edward R. Suits, Deputy United States Marshal, Syracuse, New York, testified that on July 16, 1979, he went to the Monroe County Jail, along with Inspector John Zriglen, to take Mr. Kelly and another inmate for further removal to the United States Penitentiary, Lewisburg, Pennsylvania. He said he and Inspector Zriglen did not inventory Kelly's property. The prop-

erty was merely physically transported with the prisoner. He described the procedure followed in taking custody of a prisoner at the Monroe County Jail. When a prisoner is signed out and ready to go, the jail deputy opens the cell block. The prisoner, who is handcuffed with leg irons placed upon him, is handed his property which has been placed on a metal table before him. The property is then placed by the prisoner in the back seat of the vehicle used to transport him. He testified an inmate is not allowed to possess certain personal property, such as a belt, wallet, jewelry, cash, shoe laces or nail files, while in transit. Therefore, these kinds of items are placed in an envelope, stapled about three times across the top, with the inmate's name on it. Clothing items, however, are placed in a bag. He testified the Marshals did not open or inventory any property belonging to Kelly. Normally, he said deputy marshals do not carry any property for a prisoner unless he has a great deal of property.

When they reached Lewisburg, he said Kelly was handed his property and he entered the institution in a group. Inmates wait in a receiving area until a receiving and discharge clerk process the inmate into the institution. He said Kelly would have carried his own property into the receiving area.

Jan Musgarve, Deputy United States Marshal, testified records of the Marshals Service show that Musgarve picked up Howard Kelly at the jail in Nashville, Tennessee, and transported him to Lexington, Kentucky. Musgrove said, however, that he did not personally remember doing so, did not recall Mr. Kelly and did not recognize Kelly in Court. He also testified prisoners usually carry their own property. According to Musgarve, Marshals do not get involved with carrying property since they must keep their hands free.

There is no dispute that Kelly had a diamond ring among other property when he was delivered into the custody of the United States Marshal at the Monroe County, New York, jail. The Prisoner Property Record, dated June 20, 1979, (Exhibit 1) shows that a yellow ring with nine white stones was among items of property Kelly had in his possession when he entered that jail.

On July 16, 1979, that ring and other property was delivered to Kelly when the Marshals Service took custody of him. It is verified by Exhibit 7 that the Marshals Service took custody of Kelly at the Monroe County Jail on July 16, 1979. It is not disputed the ring was missing when Kelly arrived at his final destination.

By letter dated October 4, 1979, Kelly filed a complaint with United States Marshal Joseph I. St. George, Buffalo, New York, concerning the missing ring (Exhibit 6). Kelly filed a tort claim Form 95 at the United States Penitentiary, Terre Haute, Indiana. On November 28, 1979, Kelly's Form 95 claim was sent to Marshal St. George, Buffalo, New York. The claim was for a yellow gold, nine stone diamond ring with a total weight of one carat. The value of the ring was stated as $1,500.

The government's position in this lawsuit is:

1) Kelly has the burden of proving the Marshals Service was negligent by a preponderance of the evidence.

2) The evidence presented shows, at most, that while in transit between various institutions, Kelly had a diamond ring turn up missing.

3) The diamond ring could have been lost in any one of the several institutions in which Kelly was housed during transit.

4) The Marshals Service did not have control or possession of Kelly's property.

5) The Evidence does not show any negligence on the part of the Marshals Service.

6) Kelly's claim is subject to the exception stated in § 2680(c), of the Federal Tort Claims Act.

The basic issue in this lawsuit is whether the Marshals Service was negligent in not inventorying Kelly's personal property and

establishing a chain of custody for that property from the time Kelly and his property entered into the custody and possession of the Marshals Service until he was transported to his final destination, and, whether that alleged negligence resulted in the loss of Kelly's ring.

■ It is the Court's opinion, contrary to that of the government, that Kelly and his personal property were in the custody and possession of the Marshals Service during his transit from the Monroe County, New York, jail to the facility at Lexington, Kentucky. It is also the Court's opinion that it was a negligent and wrongful act and omission for the Marshals Service to take custody of a prisoner and possession of his personal property and not inventory property items of significant value and establish a chain of custody for that property from its point of origin to its point of destination. The Court finds this negligence on the part of the Marshals Service to have been the proximate cause of the loss of Kelly's diamond ring even though he was housed in various prison facilities during his transit

and the ring very well could have been lost, and probably was lost, in any one of those institutions, as the government claims.

■ This decision is predicated on the simple premise that when a prisoner and his property enter into the custody and possession of the Marshals Service for transportation a duty of due care arises which requires the Marshals Service to inventory personal property items of value and establish a chain of custody for that property. Failure to do so constitutes a breach of that duty and renders the United States liable for negligence under the Federal Tort Claims Act.

The Court is aware the Marshals Service will protest any requirement that it should inventory and establish a chain of custody for property owned by prisoners during transit between institutions. The Court finds, however, the receipt procedure followed at the Monroe County Jail in this case is an excellent example of how simple it is to handle property items.

**MONROE COUNTY JAIL**

## PRISONER PROPERTY RECORD

Name _Howard Kelly_ Date _6-20-79_

Upon entering this institution the following articles were taken from the above inmate.

Watch _Seiko Quartz Yel._ Wallet ___—Ø—___
Ring _Yellow Lions Head / Yellow / 9 whit. stones_ Keys ___—Ø—___
Other _Pr. Laces, Necklace_ _____
Cash $_10.00_ Checks ___—Ø—___ Slip No. _15129_

I have compared this with my belongings and find it to be correct. I have received rules and regulations for the jail, and cup # _242_

Signed X *Howard D. Kelly*

Searched by X *Moody #676*

Watch _1 SEKO_    Wallet ___

Ring _Yellow Lionshead Yellow 9 wrst_   Keys ___

Other _1 PR. LACES NECKLACE_

Cash ___0___    Checks _30.25_

I hereby certify I have received all the items listed above in good condition, and returned cup # _243_

Signed X *Howard D. Kelly*

Date _7-16-79_   I.D. No. _66483_

Released by _____

---

Had the Marshals Service followed this procedure at each facility en route to the final destination, Mr. Kelly would have known in which facility the ring was lost or stolen and sought redress accordingly.

The government claims this lawsuit comes within the exception contained in 28 U.S.C. § 2680(c). *Kosak v. United States,* 465 U.S. 848, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984). That case is entirely different from this case and is therefore easily distinguishable. *Kosak* dealt with the exception from coverage under § 2680(c) of claims arising in respect of the detention of any goods or merchandise by the Customs Service. This case, of course, does not involve the Customs Service; rather, this lawsuit deals with the United States Marshals Service and allegations of negligence by the Marshals Service in the handling of the property of a prisoner. Accordingly, the exception in § 2680(c) does not apply in this case.

Kelly had a legal right to bring this action under the Federal Tort Claims Act, 28, U.S.C. § 2671 *et seq.,* and 28 C.F.R. § 14.1 *et seq.* Kelly met a jurisdictional prerequisite by filing an appropriate administrative claim. The Court finds the Marshals Service to have been negligent in failing to inventory and establish a chain of custody for his property from the time Kelly entered into the custody of the Marshals Service. That chain of custody should have continued from institution to institution until Kelly was delivered to his final destination. This finding of negligence renders the United States liable to Kelly under the Federal Tort Claims Act. The government, however, is only liable for $1,500, this being the amount of the claim presented to the federal agency, the plaintiff having failed to establish his claim falls within one of the exceptions listed in 28 U.S.C. § 2675(b). It is therefore ORDERED that Howard Dennis Kelly recover the sum of $1,500 from the United States of America.